# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

ROBERT SWITZER,

        Plaintiff,

v.                                                                   ACTION NO.
                                                                   4:08cv25

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff brought this action under 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3) seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act.

This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72(b) of the Federal Rules of Civil Procedure, as well as Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. This Court recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL BACKGROUND

On August 7, 2001, Plaintiff Robert Switzer ("Switzer") filed an application for a period of disability and Disability Insurance Benefits ("DIB")(R. 86-88)[1], alleging that he had been disabled since April 1, 1994 due to post-traumatic stress disorder ("PTSD") and seizures (R. 108-17). The

---

[1] Page citations are to the administrative record previously filed by the Commissioner.

Commissioner denied Switzer's application initially (R. 45-46, 57-59), and upon reconsideration (R. 47-48, 62-64). Switzer then received an administrative hearing on November 15, 2002, at which Switzer and an independent vocational expert testified. (R. 1021-43.) On December 24, 2002, James Quigley, the Administrative Law Judge (ALJ), issued a decision denying Switzer's claim. (R. 52-56.)

On review, however, the Appeals Council vacated the ALJ's decision and remanded Switzer's case for further analysis. (R. 74-76.) A second hearing took place on June 29, 2004, before ALJ Quigley. (R. 1044-68.) In a written decision dated August 23, 2004, the ALJ again denied Switzer's claim for benefits. (R. 25-31.) On May 5, 2006, the Appeals Council denied Switzer's request for review. (R. 10-13.)

On November 8, 2006, this Court, pursuant to the Commissioner's motion, remanded the matter for further administrative proceedings. (R. 1125-26.) Following this Court's remand order, the Appeals Council directed that a different ALJ conduct the hearing and complete the administrative record. (R. 1122-24.) Oscar P. Dodson, the assigned ALJ, conducted the third hearing on April 4, 2007. (R. 1189-1209.) In a written decision dated May 25, 2007, the ALJ denied Switzer's claim for benefits, concluding that Switzer's alcohol abuse was a contributing factor material to the determination of disability. (R. 1101-12.) The Appeals Council denied Switzer's request for review on January 28, 2008, (R. 1069-71), thereby rendering the ALJ's decision the final decision of the Commissioner. Switzer timely filed the instant action for judicial review pursuant to 42 U.S.C. § 405(g). This case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II. <ins>FACTUAL BACKGROUND</ins>

Born on September 2, 1949, Switzer is currently 59 years old. (R. 1193). Switzer has a high school education (R. 1194) and served in the military (Army, then Navy) for approximately 20 years (R. 841-42, 1024). After retiring from the Navy, Switzer worked as a logistics analyst for Newport News Shipbuilding from 1989 to 1991. (R. 110, 1195.) Although Switzer testified to "dealing with" his PTSD as early as 1967 (R. 1197), Switzer stated that the official onset date of his PTSD (the initial date he was unable to participate in substantial gainful activity) was April 1, 1994 (R. 86, 109, 1104, 1194-95). According to the earning records, Switzer acquired quarters of coverage to remain insured through March 31, 2000. (R. 89-102.)

**A.  Medical Evidence in the Record (Between April 1, 1994 and March 31, 2000)**

On August 20, 1995, Switzer was admitted to the Veterans' Administration Medical Center (VAMC) in Hampton after consuming a heavy meal and experiencing chest pain. (R. 431-32.) According to the medical report, Switzer had "no significant past medical history, except for alcohol dependence." (R. 431.) The report noted, however, that Switzer "has been off of alcohol since 1991." (R. 431.) The hospital discharged Switzer two days later in good condition, with no restrictions on his physical activity. (R. 432.)

On February 1, 1996, Switzer was admitted to the VAMC due to alcohol withdrawal and dependence. (R. 417-20.) The hospital noted Switzer's long history of PTSD, characterized by hyperarousal, anxiety, social withdrawal and isolation, intrusive recollections, guilt and nightmares, but the report stated that all of these symptoms were "complicated by alcohol dependence." (R. 417.) The report also stated that his "[v]ocational functioning is compromised by PTSD." (R. 420.) The February 8 entry on the medical record indicates an extended record of alcohol abuse, including

that Switzer "began drinking beer at age 5" and "will drink a case of beer." (R. 424-25.) Switzer was discharged on February 12, 1996. (R. 420.)

Switzer was again admitted to the VAMC on March 23, 1997, due to upper gastrointestinal bleeding secondary to alcohol use. (R. 400-02.) The medical report noted that he "has been drinking heavily in the past for quite some time, many years." (R. 400.) The hospital offered an alcohol rehabilitation program, but Switzer adamantly refused, and was discharged on March 25, 1997, with no work limitations. (R. 402.)

On September 1, 1999, Switzer arrived at the emergency room of Sentara Hampton General Hospital for acute mushroom poisoning. The medical report noted a "longstanding history of seizures." (R. 164.) Switzer was discharged on September, 3, 1999. (R. 167.)

**B. Medical Evidence in the Record (after March 31, 2000)**

On April 17, 2002, Switzer requested to be evaluated for PTSD at the VAMC. (R. 841.) Switzer recounted his experience in Vietnam: (a) being shot at; (b) seeing close friends killed; (c) killing people; (d) mutilated bodies; and (e) guilt and shame for what he did. (R. 842.) The medical report diagnosed Switzer with PTSD based on reported symptoms, which included nightmares, emotional and social detachment, isolation, hyperarousal, periods of sadness, and strong tendencies to conflict with authority figures. (R. 843-44.) Furthermore, Switzer advised the doctor that these symptoms began after his return from Vietnam and have worsened over time. (R. 843.)

On June 19, 2002, Switzer returned to the VAMC for evaluation after accidentally cutting his left wrist with a knife. (R. 513.) Switzer reported heavy alcohol abuse, and stated that things might improve if he stopped drinking, but refused the treatment options offered. (R. 513.) The hospital assigned him a Global Assessment of Functioning (GAF) score of 35 and discharged

Switzer on June 21, 2002. (R. 513, 516.)

The VAMC examined Switzer again on July 10, 2002. Switzer reported the same symptoms (nightmares, isolation, hyperarousal, depression), but this time stated that the symptoms existed even before the Vietnam War, dating back to his childhood experience. (R. 793-94.) Also, Switzer explained that he had abused alcohol since childhood, but identified one uninterrupted period of abstinence where "in 1991, he stayed sober for 3 years and 11 months." (R. 794.) The hospital assigned Switzer a GAF score of 60 and diagnosed the following: (1) PTSD; (2) alcohol dependence; and (3) substance-induced mood disorder. (R. 796.) This marked the official commencement of Switzer's "treatment" for PTSD. (R. 615.) Switzer was discharged on July 12, 2002. (R. 797.)

On February 27, 2003, Switzer visited the VAMC for a scheduled appointment. (R. 691.) Switzer reported going to Alcoholics Anonymous (AA) meetings 2-3 times per week and "doing better" in general. (R. 691.) The medical report noted that Switzer was "casually and neatly dressed" and his mood was visibly improved. (R. 692.) On August 28, 2003, the doctors noted "[n]o memory problems" and that Switzer's "[a]ttention and concentration span [were] fair" and "[t]houghts [were] logical and goal directed." (R. 624.)

In an office visit on December 4, 2003, Switzer reported the same ongoing symptoms of PTSD, and the VAMC assigned him a GAF of 45. (R. 616-17.) Also, the medical report indicates that "[h]e has not had a drink since April and has been attending AA meetings." (R. 617.)

On February 12, 2004, despite continuing to experience nightmares and flashbacks, Switzer exhibited a good mood, no memory problems, and his thoughts were "logical and goal directed." (R. 606.) On February 27, 2004, Switzer reported pain and numbness in his body. Along with the physical ailments, the VAMC medical records indicate that Switzer was "alert and oriented," with

good judgment and memory. (R. 564-65.)

On March 9, 2006, Switzer contacted a neurologist and reported pain from the back of the neck to the lower back. (R. 1171.) On October 20, 2006, Switzer followed up with the same neurologist, and when questioned about alcohol consumption, stated that he had stopped drinking in March 2004, except for "a glass of beer and a drink of wine during the Super Bowl in 2006." (R. 1145.)

**C. Department of Veterans Affairs**

On August 31, 2005, the Department of Veterans Affairs granted Switzer a "50 percent disability evaluation based on your treatment records . . . for post traumatic stress disorder [PTSD]." (R. 1009.) More specifically, the "evaluation of 50 percent is assigned for occupational and social impairment with reduced reliability and productivity. . . ." (R. 1009.) The "effective date" for the grant of disability, however, was December 19, 2003. (R. 1010.)

**D. Testimony in the Record**

Switzer testified that he has been "dealing with" the challenges of PTSD since 1967 (R. 1197), but he was not aware of his disorder until years later (R. 1026, 1049). When asked the nature of his traumatic experience, Switzer replied, "Many of them. Body bags, that's one of them." (R. 1051.) At the time of his hearings, Switzer described suffering from nightmares, sleep disorder, anxiety attacks, hyperarousal, social withdrawal, and depression (R. 1030-33, 1038-39, 1059-60, 1197-98), and further testified that these symptoms existed before the year 2000 (R. 1050-51).

The testimony reveals a history of alcohol abuse, but the dates are unclear. For example, during the hearing on June 29, 2004, Switzer stated he would drink "a 12 pack a day, sometimes even more . . . [w]henever I had it," but he seemed unable to pinpoint the time period. (R. 1052.)

6

A short while later in the direct examination, his attorney asked, "So have you been free of alcohol use for the last two years?" Switzer replied, "Yes." (R. 1053.) At the subsequent hearing less than three years later, Switzer then testified that the last time he had used alcohol was "[s]ix years ago." (R. 1198.) Switzer stated that he "drank to cover up [his] pain" (R. 1199), and the testimony describes the alcohol abuse "as a way of medicating" (R. 1052).

At the April 4, 2007 hearing, the court asked the vocational expert to consider the availability of work for a hypothetical individual of Switzer's age, education, and work experience who: (1) would be limited to performing simple, repetitive tasks; (2) would need to avoid close interaction with the general public; and (3) would need to avoid working around unprotected heights and dangerous machinery. (R. 1206-07.) In response, the vocational expert testified that such an individual would be capable of performing the following jobs: (a) truck driver helper; (b) general laborer; (c) laundry worker; (d) janitor; (e) hand packer; and (f) housekeeper. (R. 1207.) If the hypothetical individual were unable to interact with other employees and sustain attention, however, the vocational expert testified that he would not be able to perform any of the designated jobs. (R. 1207.)

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g) (2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)

(quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either (A) the ALJ's determination is not supported by substantial evidence on the record, or (B) the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity[2] by reason of any

---

[2] "Substantial gainful activity" is work that (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; § 416.910 (2008). Substantial work activity is "work activity that involves doing significant physical

>medically determinable physical or mental impairment[3] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a) (2008); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A) (2008). To meet this definition, the claimant must have a "severe impairment"[4] which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy.[5] 20 C.F.R. § 404.1505(a) (2008); see also 42 U.S.C. § 423(d)(2)(A) (2008).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment,

---

or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572 (2008).

[3] "Physical or mental impairment" is defined in section 223(d)(3) of the Social Security Act, Title 42 U.S.C. § 423(d)(3), as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

[4] The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c) (2008).

[5] The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2 (2004). However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a vocational expert to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. § 416.920(f) (2008); § 404.1520(f) (2008); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10.

(3) has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment that prevents him from any substantial gainful employment. An affirmative answer to question one or a negative answer to question two or four results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920 (2008).

**A. The ALJ's Decision**

As a preliminary matter, ALJ Dodson found that Switzer met the insured status requirements of the Social Security Act through March 31, 2000. (R. 1104.) ALJ Dodson then made the following findings under the five-part test for disability: (1) Switzer has not engaged in substantial gainful activity since April 1, 1994 (the alleged onset date of disability); (2) prior to March 31, 2000, Switzer had severe impairments (alcohol abuse, PTSD, and probable seizure disorder); (3) Switzer's combination of impairments did not meet one of the official impairments listed in 20 C.F.R. § 404.1520; (4) including consideration of the alcohol abuse, Switzer was unable to perform past relevant work prior to expiration of insured status; and (5) including consideration of the alcohol abuse, Switzer cannot perform any substantial gainful employment. (R. 1104-09.) Thus, including consideration of the alcohol abuse, ALJ Dodson "concluded that Mr. Switzer was under a disability at the time his insured status expired. . ." (R. 1104.)

ALJ Dodson denied benefits, however, after evaluating the same five-part test under a separate assumption of no substance (alcohol) abuse. Even though Switzer's PTSD and "unsubstantiated seizure disorder" constituted severe impairments on their own (R. 1109), ALJ Dodson found that, absent alcohol abuse, Switzer would have been able to perform substantial

gainful employment (R. 1112). In sum, ALJ Dodson held that Switzer's "substance abuse disorder is a contributing factor material to the determination of disability," and as a result, Switzer "is not considered to be 'disabled' under the Social Security Act." (R. 1104.)

**B. The Contributing Factor of Switzer's Alcoholism**

Under the Code of Federal Regulations, if an applicant is "disabled and [has] medical evidence of [his] drug addiction or alcoholism, [the Commissioner] must determine whether [the] drug addiction or alcoholism is a *contributing factor material to the determination of disability*." 20 C.F.R. § 404.1535(a)(emphasis added). The "key factor" is whether the applicant would still be considered disabled if the applicant "stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1). First, the ALJ must determine which physical and mental limitations would remain in the absence of drug addiction or alcoholism. 20 C.F.R. § 404.1535(b)(2). Second, the ALJ must determine if the remaining limitations would be disabling. If the remaining limitations would not be disabling, then the "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(i).

First, neither party disputes ALJ Dodson's finding that if Switzer had stopped drinking, Switzer's PTSD would have remained as a severe impairment. (R. 1109.) Thus, the sole issue is whether there is substantial evidence in the record to support the ALJ's determination that Switzer's PTSD symptoms,[6] in the absence of alcohol abuse, would not have foreclosed all avenues of substantial gainful employment. (R. 1110-12.) Switzer argues that the VA physicians "clearly" attributed his "problems with vocational functioning to his PTSD, no alcohol related abuse," (Pl.'s

---

[6] Although ALJ Dodson addressed the issue of Switzer's alleged seizure disorder (R. 1109-12), in addition to PTSD, Switzer did not address the seizure disorder in either of his briefs. Thus, this Court will limit its review to the issue of Switzer's PTSD.

Br. at 23), but this argument lacks merit. For example, one VAMC medical report (February 1996) stated that Switzer's "[v]ocational functioning is compromised by PTSD," (R. 420), but the same report explained that the PTSD symptoms were "complicated by alcohol dependence" (R. 417). Furthermore, the notes to this medical record chronicle an extended record of alcohol abuse, including that Switzer "began drinking beer at age 5" and "will drink a case of beer." (R. 424-25.) A year later, another VAMC medical report noted that Switzer "has been drinking heavily in the past for quite some time, many years." (R. 400.) The hospital offered an alcohol rehabilitation program, but Switzer adamantly refused, and was discharged. (R. 402.) These medical records, relied upon by ALJ Dodson (R. 1106), constitute substantial evidence that Switzer's abuse of alcohol contributed to the severity of his PTSD symptoms.

Switzer also argues that his testimony of abstaining from alcohol for the six years preceding the 2007 hearing, juxtaposed with his continued PTSD symptoms, proves that the past alcohol abuse was not a material factor in his disability. (Pl.'s Br. at 23.) The medical records, however, undermine Switzer's argument. ALJ Dodson reviewed the entire record and observed that "in 2002, Mr. Switzer's drinking subsided and he was able to pursue treatment for his PTSD." (R. 1111.) The judge then studied the subsequent medical records, found consistent evidence of Switzer's improved condition, and concluded that "Mr. Switzer was able to think logically, maintain fair attention and concentration, and he had no memory problems." Id.; see also, e.g., (R. 624)(Aug. 28, 2003 – doctors noted no memory problems, fair concentration, and logical and goal directed thoughts); (R. 606)(Feb. 12, 2004 – Switzer exhibited a good mood, no memory problems, and his thoughts were "logical and goal directed."); (R. 564-65)(Feb. 27, 2004 – Switzer was "alert and oriented," with good judgment and memory). Thus, there is substantial evidence in the record to support ALJ

Dodson's finding that Switzer "would have been able to perform simple routine tasks not involving close interaction with the general public, prior to March 31, 2000, *absent substance abuse*." (R. 1111)(emphasis added).

Finally, Switzer's reliance on the decision of the Department of Veterans Affairs is misplaced. (Pl.'s Br. at 22.) The Department of Veterans Affairs rated Switzer with a 50% service-connected disability, (R. 1009-1010), but ALJ Dodson correctly noted that the effective date was December 19, 2003, after the expiration of Switzer's insured status (R. 1107). Furthermore, the Department of Veterans Affairs refused to grant a higher level of disability because: (a) "thoughts and speech processes were goal directed;" (b) "[m]emory function was good;" (c) "[i]nsight and judgment were good;" and (d) "[t]he degree of your impairment is considered to be moderate." (R. 1009.) Under the standards of the Social Security Act, these medical observations actually support ALJ Dodson's opinion that a sober Switzer would be capable of substantial gainful employment.

ALJ Dodson consistently cited to evidence in the medical record and the testimony of experts to support each of his findings of fact. This evidence was substantial, and thus, the ALJ's factual findings are conclusive and must be affirmed. Perales, 402 U.S. at 390. ALJ Dodson found that if Switzer "stopped the substance abuse, there would be a significant number of jobs in the national economy that the claimant could perform." (R. 1112.) It follows then, as a matter of law, that Switzer's "substance abuse disorder is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2)(i). Accordingly, Switzer has not been disabled within the meaning of the Social Security Act at any time between the alleged onset date of Switzer's PTSD and the date Switzer's insured status expired.

## IV. **RECOMMENDATION**

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be AFFIRMED.

## V. **REVIEW PROCEDURE**

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of this report to the objecting party, see 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                                /s/
                                   Tommy E. Miller
                           United States Magistrate Judge

Norfolk, Virginia
January 15, 2009

## **CLERK'S MAILING CERTIFICATE**

A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

Charlene A. Morring, Esq.
Montagna Klein Camden LLP
425 Monticello Avenue
Norfolk, Virginia 23510


Virginia L. Van Valkenburg, Esq.
Office of the United States Attorney
101 West Main Street
Suite 8000
Norfolk, Virginia 23510


                                  Fernando Galindo, Clerk

                By _____
                                 Deputy Clerk

                                  January     , 2009